Michael Nourmand, Esq. (SBN 198439)
mnourmand@nourmandlawfirm.com
James A. De Sario, Esq. (SBN 262552)
jdesario@nourmandlawfirm.com
**THE NOURMAND LAW FIRM, APC**
8822 West Olympic Boulevard
Beverly Hills, California 90211
Telephone: (310) 553-3600
Facsimile: (310) 553-3603

Attorneys for Plaintiff, ELLA JACOBS, on behalf of herself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

ELLA JACOBS, on behalf of herself and all others similarly situated,

Plaintiffs,

v.

INSTRUCTURE, INC., a Delaware corporation; and DOES 1 through 100, Inclusive

Defendants.

CASE NO.:

CLASS ACTION COMPLAINT FOR DAMAGES AND RESTITUTION

1. NEGLIGENCE;
2. NEGLIGENCE PER SE;
3. BREACH OF IMPLIED CONTRACTS;
4. UNJUST ENRICHMENT;
5. VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT [Cal. Cil. Code §§ 11798.80, et seq.];
6. VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW [Cal. Bus. & Prof. Code §§ 17200, et seq.];
7. VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT [Cal. Civ. Code §§ 1750, et seq.]; and
8. VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT [Cal. Civ. Code §§ 1798.100, et seq.]

**JURY TRIAL DEMANDED**

Plaintiff Ella Jacobs, individually and on behalf of all others similarly situated, ("Plaintiff"), bring this class action complaint against Defendant Instructure, Inc. ("Defendant" or "Instructure") seeking monetary damages, restitution, and/or injunctive relief for the proposed class, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of her counsel, and personal knowledge or facts that are a matter of public record.

## INTRODUCTION

1. This class action arises from a cybersecurity incident, data breach, and service outage involving Canvas, the learning management system operated by Defendant, Instructure, Inc.

2. This case is not merely about whether names, email addresses, or student identification numbers were exposed. It is about the compromise of an education platform that Instructure knew stored student record communications.

3. Canvas is not a peripheral application. For students, faculty, and universities, Canvas is core academic infrastructure used for course materials, assignments, quizzes, exams, grading, accommodations, communications, and student faculty messaging.

4. Instructure knew that Canvas was used by schools, colleges, universities, students, faculty, staff, and administrators to store and exchange sensitive student information and education record data.

5. Instructure also knew that students relied on Canvas to access course materials, study materials, gradebooks, exam instructions, quizzes, assignments, and final exams.

6. Students suffered sensitive education record injuries because Instructure has indicated that the data taken included messages among Canvas users, and Canvas message often contain confidential student communications about illness, disability accommodations, pregnancy, mental health, harassment, bullying, Title IX matters, discipline, grades, financial hardship, housing insecurity, immigration concerns, family emergencies, and safety issues, among other things.

7. On or about April 29, 2026, Instructure detected unauthorized activity in Canvas. Instructure has since acknowledged that the data taken included names, email address, student ID numbers, and messages among Canvas users. Instructure further disclosed that on May 7, 2026, the unauthorized actor made changes to pages that appeared when some students and teachers were logged in through Canvas. Instructure states that activity was carried out by exploiting an issue related to its free for teacher accounts. Instructure's own remediation statements confirm the seriousness of the compromise: Instructure states that it revoked privileged credentials and access tokens, deployed platform wide protections, rotated certain internal keys, restricted token creation pathways, added monitoring, and began hardening administrative access, token management, permissions, monitoring, and related workflows.

8. Instructure's incident was not limited to passive data exfiltration. It also resulted in a live platform integrity and availability failure. Canvas was placed into maintenance mode and students were instructed by their institutions not to access Canvas until official guidance was provided. For students, that meant loss of access to course materials, assignments, grades, communications, study materials, and exams.

9. Instructure took Canvas offline and placed Canvas into maintenance mode for many colleges and universities, including Los Angeles Community College District ("LACCD"). Instructure's status page stated that Canvas was placed in maintenance mode on May 7, 2026.

10. LACCD informed students, faculty, and staff that Canvas was unavailable college wide, that users should not engage with or respond within Canvas, and that several colleges and universities had reported access blocked by a ransom notice before Instructure took Canvas offline.

11. Plaintiff, Ella Jacobs is a LACCD student attending LA Pierce College, who relied on Canvas for, among other things, course materials, academic communications, assignments, and exams.

///

12. Instructure's own public materials confirm that Canvas process messages, course content, assessment results, course results, submission comments, submitted content, media, identifiers, and other education-related records. Instructure's Data Processing Addendum ("DPA") further states that, for U.S. K-12 and higher education customers, student data constitutes education records and Instructure operates as a FERPA Schook Official for personally identifiable information from education records.

13. Plaintiff brings this action because Instructure failed to safeguard student data, failed to prevent unauthorized access to and manipulation of Canvas systems, failed to maintain the availability and integrity of critical education infrastructure, and failed to provide timely, adequate, and transparent notice and remediation.

14. Plaintiff seeks damages, restitution, declaratory relief, and injunctive relief requiring Instructure to remediate its security failures, protect exposed student data and Canvas messages, preserve evidence, provide adequate notice, and compensate students whose privacy, academic activities, finals, credentials, and educational records were affected.

## PARTIES

15. Plaintiff, Ella Jacobs is a citizen and resident of California and a student at LACCD, attending LA Pierce College, Woodland Hills, California. During the relevant academic period, Plaintiff attended LA Pierce College part of LACCD, used Canvas for LA Pierce College coursework, and suffered injury in Los Angeles County.

16. Defendant Instructure, Inc is a Delaware corporation with its principal place of business at 6330 South 3000 East, Suite 700, Salt Lake City, Utah 84121. Instructure develops, operates, hosts, maintains and sells Canvas LMS to educational institutions throughout United States, including institutions in California. Instructure contracted to provide Canvas to California institutions, processed California student data, maintained California student education records and Canvas messages, and caused injury to Plaintiff and proposed class members in California.

## JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d), because it's a putative class action involving more than 100 proposed class members, the aggregate amount in controversy exceeds $5 million exclusive of interest and costs, and minimal diversity exists.

18. This Court has personal jurisdiction over Instructure because Instructure purposefully directed Canvas services into California, contracted with California educational institutions, processed data of California students and users, and caused injury in California.

19. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District. LACCD is located throughout Los Angeles County, California, Plaintiff used Canvas for LA Pierce College coursework, LACCD's Canvas instance was affected and Plaintiff suffered in injury in California.

## FACTUAL ALLEGATIONS

20. Canvas is a web-based learning management system used by educational institutions, educators, students, and administrators to manage course materials, assignments, quizzes, exams, grades, and academic communications.

21. Students are often required to use Canvas as a condition of course participation. They cannot realistically opt out.

22. Instructure's own master terms states that it will use commercially reasonable efforts to make each service available with an annual uptime percentage of at least 99.9%. Instructure also warrants that it shall implement reasonable administrative, technical, and physical safeguards to secure its systems from unauthorized access and to secure customer content.

23. Instructure's own trust center similarly represents that Instructure builds security into its cloud platform, infrastructure, and processes, and that it guarantees and delivers 99.9% uptime.

24. Students, including Plaintiff, reasonably relied on Instructure to provide a secure and available learning-management platform.

25. Instructure's DPA defines customer personal data as personal data provided by or on behalf of a customer and processed by Instructure in connection with providing the services.

26. Instructure's DPA defines a security breach as a breach leading to unauthorized disclosure of or access to customer personal data transmitted, stored, or otherwise processed by Instructure.

27. Instructure's DPA requires Instructure to maintain appropriate technical and organizational measures for the protection, security, confidentiality, and integrity of customer personal data and account data.

28. Instructure's DPA also requires Instructure to notify customers of a security breach without undue delay, investigate the breach, provide information about it, and take commercially reasonable steps to mitigate its effects and minimize resulting damage.

29. Instructure's schedule of data for Canvas LMS lists numerous types of personal and student data processed through Canvas, including usernames/IDs, assessment results, calendar events, comments, course content, course results, email addresses, enrollment status, first and last names, IP addresses, messages, media content, pronouns, session IDs, school name, school position, SIS identifiers, submitted content, and Trunitin IDs.

30. Instructure's DPA expressly identified Canvas messages as including notifications and course conversations.

31. Instructure's U.S. K-12 and higher education addendum defines "Education Records" as records, files, documents, and other material directly related to a student and maintained by the educational customer or by a person acting for the customer, as defined under FERPA.

///

32. Instructure's DPA defines "Student Data" broadly to include data descriptive of a student, including education-record information, email address, first and last name, identifiers, videos, test results, special-education data, grades, evaluations, disabilities, socioeconomic information, documents, student identifiers, search activity, photos, voice recordings, geolocation information, and other information that would provide information about a specific student.

33. Instructure's DPA states that Student Data constitutes Education Records and that Instructure operates as a FERPA School Official for customers subject to FERPA.

34. Accordingly, Instructure knew that Canvas stored more than low-value contact information. Canvas contained student education records, grades, assessments, comments, messages, submitted content, and potentially sensitive student communications.

35. On April 29, 2026, Instructure detected unauthorized activity in Canvas.

36. Instructure states that it revoked the unauthorized party's access, opened an investigation, engaged outside forensic experts, and notified law enforcement.

37. Instructure later disclosed that the data taken in the April 29th incident included names, email addresses, student ID numbers, and messages among Canvas users.

38. Instructure states that it has found no evidence so far that passwords, dates of birth, government identifiers, or financial information were involved.

39. On May 7, 2026, Instructure identified additional unauthorized activity tired to the same incident.

40. Instructure states that the unauthorized actor made changes to pages that appeared when some students and teachers were logged in through Canvas.

41. Instructure temporarily took Canvas offline into maintenance mode to contain the activity, investigate, and apply additional safeguards.

///

42. Instructure later states that the unauthorized actor exploited an issue related to free for teacher accounts, which Instructure described as the same issue that led to unauthorized access the prior week.

43. Instructure further stated that it temporarily shut down free for teacher accounts, revoked privileged credentials and access tokens, deployed platform wide protections, rotated internal keys, restricted token-creation pathways, added monitoring, and was hardening administrative access, token management, permission, monitoring, and related workflows.

44. These remedial steps demonstrate that the incident implicated core access control credentials, token, key management, administrative, and monitoring controls.

45. Instructure's own statements show that the incident was not limited to a passive exposure of data. The unauthorized actor was able to change pages shown to certain logged in users.

46. That conduct created reasonable concern about credential compromise, credential harvesting, phishing, user impersonation, and account integrity.

47. Plaintiff and class members were therefore reasonable in changing passwords, monitoring accounts, preserving records, and taking other mitigation steps.

48. LACCD uses Canvas for academic coursework, assignments, exam preparation, communications, gradebooks, and online exams.

49. On or about May 6, 2026, LACCD notified its student, faculty and administrators that a data breach at Instructure impacted LACCD data stored on Instructure servers.

50. LACCD understood that the incident was not directed at LACCD but was part of a larger breach impacting higher education customers.

51. LACCD warned users to beware of phishing messages, not to click links in unsolicited messages claiming to be from Canvas, Instructure and to access Canvas and other websites directly.

///

52. On or about May 7, 2026, LACCD updated users that several colleges and universities using Canvas had reported that their access to the system was blocked by a ransom notice and that, in response, Instructure took Canvas offline.

53. LACCD then indicated that Canvas was unavailable district wide, including LA Pierce College, that the issue was nationwide, and that users should not attempt to engage with or respond within Canvas until further notice.

54. Plaintiff suffered stress, anxiety, lost access to academic materials, disruption of course preparation, and academic uncertainty.

55. Plaintiff used Canvas message, comments, submissions, and/or other Canvas communications to discuss requested academic supportive measures and sensitive academic matters.

56. Because Instructure has acknowledged that messages among Canvas users were taken, Plaintiff's Canvas communications concerning supportive measures, safety, academic participation, and related sensitive matters fall within the category of Canvas communications Instructure has identified as involved in the incident.

57. Plaintiff would not have entrusted information to Canvas or relied on Canvas in the same manner had she known Instructure's security and availability controls were inadequate to prevent unauthorized access, page manipulation, and data theft.

58. Plaintiff and class members suffered concrete injuries including: loss of privacy; loss of control over personal information, student data, education records, and Canvas messages; exposure of names, email addresses, student ID numbers, and Canvas messages; exposure or threatened exposure of sensitive student communications; increased phishing, impersonation, and credential risk exposure; academic uncertainty and grade related risk; emotional distress, stress, and anxiety; loss of benefit of the bargain; diminished value of Canvas services and student data; and need for injunctive relief, monitoring, and remediation.

59. Plaintiff and class members with sensitive Canvas messages suffered additional privacy harm because Canvas messages can contain medical, disability, pregnancy, mental health, harassment, bullying, Title IX, disciplinary, financial hardship, immigration, housing, family-emergency, and safety related information.

## CLASS ALLEGATIONS

60. Plaintiff brings this action under Rule 23(a), 23(b)(2), and 23(b)(3) on behalf of the following classes and subclasses, reserving the right to amend, narrow, expand, or refine these definitions as discovery and investigation progress:

> **Nationwide Data Breach Class**: All persons in the United States whose personal information, student data, educational records, or Canvas messages were accessed, acquired, exposed, or taken in the Instructure/Canvas cybersecurity incident disclosed in or around May 2026.

> **California Subclass**: All California residents whose personal information, student data, education records, or Canvas messages were accessed, acquired, exposed, or taken in the Instructure/Canvas cybersecurity incident disclosed in or about May 2026.

61. Numerosity is satisfied because the proposed classes include thousands, and likely millions of users.

62. Common questions include:

(a) Whether Instructure failed to implement reasonable cybersecurity controls;

(b) Whether Instructure failed to protect Canvas messages and education record data;

(c) Whether unauthorized changes to Canvas pages created credential harvesting, account integrity, or password mitigation risks for users;

(d) Whether Instructure's notice and remediation were adequate;

(e) Whether Plaintiff and class members suffered legally cognizable damages;

(f) Whether Instructure's conduct violated statutory, contractual, common law, and industry standards; and

(g) Whether class members are entitled to damages, restitution, declaratory relief, and injunctive relief.

63. Plaintiff's claims are typical because she used Canvas, entrusted information to Canvas, and faces privacy and security risks arising from the same incident.

64. Plaintiff is adequate class representative because she has no conflicts with absent class members and has retained counsel experienced in class action litigation.

65. A class action is superior because individual damages may be too small to litigate separately, while common issues concerning Instructure's breach, security practices, notice, and remediation predominate.

66. Injunctive relief is appropriate because Instructure's security, notice, and remediation practices affects all class members.

## CAUSES OF ACTION

### COUNT ONE
### NEGLIGENCE
### (On Behalf of Plaintiff and all Classes)

67. Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

68. Instructure owed a duty to Plaintiff and class members a duty to exercise reasonable care in collecting, storing, maintaining, securing, and protecting personal information, student data, educational records, and Canvas messages.

69. Instructure owed Plaintiff and class members a duty to maintain reasonable security and availability of Canvas because it knew students and schools relied on Canvas for assignments, grades, communications, and exams.

///

///

///

70. Instructure's duties arose from its role as the operator of Canvas, its collection and processing of student data, its contractual security undertakings, its public privacy and security representations, its DPA, its role as a FERPA School Official, applicable statutory standards, and the foreseeability of harm.

71. Instructure breached its duties by failing to implement reasonable cybersecurity measures, including adequate control over free for teacher accounts, administrative access, privileged credentials, access tokens, internal keys, token creation pathways, monitoring, logging, intrusion detection, vulnerability management, and incident response.

72. Instructure breached its duties by allowing unauthorized actors to access Canvas data and change pages shown to logged in users.

73. Instructure breached its duties by failing to prevent exposure of Canvas messages and student data.

74. Instructure breached its duties by failing to provide adequate, timely, complete, and transparent notice and remediation.

75. Instructure's breaches caused Plaintiff and class members to suffer damages including loss of privacy, loss of control over data, exposure of Canvas messages, loss access to materials, password migration time, emotional distress, academic uncertainty, and increased risk of phishing and misuse.

**COUNT TWO**
**NEGLIGENCE PER SE**
**(On Behalf of Plaintiff and all Classes)**

76. Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

77. Instructure was required to comply withs statutory, regulatory, contractual, and industry standards governing data security, breach notice, availability, platform, integrity, and protection of personal information, student data, education-record information, and Canvas user communications.

78. These standards include, among other things, Section 5 of the FTC Act, applicable state data-security and breach notification laws, California data protection and breach notification standards, FERPA related restrictions and education record confidentiality standards, Instructure's contractual FERPA School Official obligations, and industry standards such as NIST and CIS controls.

79. Plaintiff does not plead FERPA as a standalone private damages cause of action. Plaintiff relies on FERPA, Instructure's FERPA School Official rile, and Instructure's own Data Processing Addendum as evidence of duty, sensitivity, foreseeability, confidentiality obligations, and the applicable standard of care.

80. To the extent any statute identified herein does not independently support negligence per se under applicable law, Plaintiff pleads those statutes, regulations, contractual obligations, and industry standards as evidence of the applicable duty of reasonable care and breach.

81. Instructure violated these standards by failing to implement reasonable safeguards, failing to prevent unauthorized access and disclosure, failing to prevent unauthorized manipulation of Canvas pages, and failing to provide timely and adequate notice and remediation.

82. Plaintiff and class members are within the class of persons these standards are designed to protect.

83. The harms suffered by Plaintiff and class members are the type of harms these standards are designed to prevent.

84. Instrucature's violations caused Plaintiff and class members damages.

**COUNT THREE**
**BREACH OF IMPLIED CONTRACTS**
**(On Behalf of Plaintiff and all Classes)**

85. Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

86. Plaintiff and class members used Canvas as required or directed by their educational institutions.

87. Plaintiff and class members provided personal information, student data, education record information, course content, messages, submissions, and other data to Instructure through Canvas.

88. Instructure accepted and processed that information to provide Canvas services.

89. In exchange for payments from educational institutions, including payments funded directly or indirectly through student tuition and fees, Instructure undertook to provide secure, reliable, and privacy protective Canvas services.

90. Instructure's contracts, DPA, Master Terms, privacy commitments, and security representations were intended to benefit Canvas users, including students.

91. Plaintiff and class members were intended third party beneficiaries of Instructure's promises to protect customer personal data, student data, education records, customer content, and Canvas service availability.

92. Instructure's contractual promises concerning security, availability, confidentiality, student data, customer personal data, education records, customer content, and Canvas service reliability were not abstract vendor promises. They were made for the benefit of the students, faculty, staff, and users whose data and academic work Instructure processes and whose course participation depended on Canvas.

93. Alternatively, an implied contract existed between Instructure and users requiring Instructure to protect user data and provide a reasonably secure and available platform.

94. Instructure breached those contracts by failing to safeguard student data and messages, failing to prevent unauthorized access, failing to prevent unauthorized page manipulation, failing to maintain reasonable availability, and failing to provide adequate notice and remediation.

95. Plaintiff and class members suffered damages as a result.

**COUNT FOUR**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and all Classes)**

96. Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

97. Instructure received substantial benefits and payments for providing Canvas as a secure and reliable learning management platform.

98. Instructure also benefited from collecting, processing, and deriving operational value from user data and usage data in connection with its services.

99. Instructure retained those benefits while failing to provide the security, privacy, reliability, and availability that users and institutions reasonably expected.

100. It would be unjust for Instructure to retain the value of payments, data, and benefits received while shifting the costs of its security failures to students and users.

101. Plaintiff and class members are entitled to restitution, disgorgement, and other equitable relief.

**COUNT FIVE**
**VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT**
**CAL. CIV. CODE §§1798.80, *ET SEQ.***
**(On Behalf of Plaintiff and all Classes)**

102. Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

103. "[T]of ensure that Personal Information about California residents is protected." The California legislature enacted Cal. Civ. Code §1798.81.5, which requires that any business that "owns, licenses, or maintains Personal Information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the Personal Information from unauthorized access, destruction, use, modification, or disclosure."

104. Instructure is a business that owns, maintains, and licenses "personal information", within the meaning of Cal. Civ. Code §1798.81.5(d)(1), about Plaintiff and class members.

105. Businesses that own or license computerized data that includes personal information, including SSNs, are required to notify California residents when their personal information has been acquired, or is reasonably believed to been acquired, by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code §1798.82. Among other requirements, the security breach notification must include "the types of Personal Information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code §1798.82.

106. Instructure is a business that owns or licenses computerized data that includes personal information as defined by Cal. Civ. Code §1798.82(h).

107. Plaintiff and class members private information includes "personal information" as covered by Cal. Civ. Code §§1798.81.5(d)(1), 1798.82(h).

108. Because Instructure reasonably believed that Plaintiff and class members private information was acquired by unauthorized persons during the data breach, Instructure had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Cal. Civ. Code §1798.82.

109. By failing to disclose the data breach in a timely and accurate manner, Instructure violated Cal. Civ. Code §1798.82.

110. As a direct and proximately result of Instructure's violations of the Cal. Civ. Code §§1798.81.5 and 1798.82, Plaintiff and class members suffered damages, as described above.

111. Plaintiff and class members seek relief under Cal. Civ. Code §1798.84, including actual damages and injunctive relief.

**COUNT SIX**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§17200, *ET SEQ.***
**(On Behalf of Plaintiff and all Classes)**

112. Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

113. Instructure is a "person" as defined by Cal. Bus. & Prof. Code §17201.

114. Instructure violated Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

115. Instructure's "'unfair" and "deceptive" acts and practices include:

a) Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and class members private information, which was a direct and proximate cause of the data breach;

b) Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures, which was a direct and proximate cause of the data breach;

c) Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and class members private information which was a direct and proximate cause of the data breach;

d) Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and class members private information, including by implementing and maintaining reasonable security measures;

e) Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and the class members private information; and

f) Failing to timely and adequately notify Plaintiff and class members of the data breach.

116. Instructure has engaged in "unlawful" business practices by violating multiple laws, including but not limited to state and federal statutes such as the CCRA, Cal. Civ. Code§§ 1798.80, et seq., the CLRA, Cal. Civ. Code§§ 1780, et seq., and the CMIA, Cal. Civ. Code§ 56.36(b).

117. Instructure's unlawful practices include:

a) Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and class members private information, which was a direct and proximate cause of the

data breach;

b) Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures, which was a direct and proximate cause of the data breach;

c) Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and class members private information, including duties imposed by, including but not limited to state and federal statutes such as the CLRA, Cal. Civ. Code§ 1780, et seq., and the CMIA, Cal. Civ. Code§ 56.36(b), which was a direct and proximate cause of the data breach;

d) Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and class members private information, including by implementing and maintaining reasonable security measures;

e) Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and class members private information, including but not limited to state and federal statutes such as duties imposed by the CLRA, Cal. Civ. Code§ 1780, et seq., and the CMIA, Cal. Civ. Code§ 56.36(b); and

f) Failing to timely and adequately notify Plaintiff and class members of the data breach.

118. Instructure's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Instructure's data security and ability to protect the confidentiality of consumers private information.

119. Instructure's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff and class members, into believing that their private information was secure.

120. As a direct and proximate result of Instructure's unfair, unlawful, and fraudulent acts and practices, Plaintiff and class members were injured and lost money or property, including monetary

damages from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased and imminent risk of fraud and identity theft, and loss of value of their private information, including, but not limited to, the diminishment of their present and future property interest in their private information and the deprivation of the exclusive use of their private information.

121. Instructure acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff and class members rights.

122. Plaintiff and class members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Instructure's, unlawful, and fraudulent business practices or use of their private information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure §1021.5; injunctive relief; and other appropriate equitable relief.

**COUNT SEVEN**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§17200, *ET SEQ.***
**(On Behalf of Plaintiff and all Classes)**

123. Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

124. The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA") is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property, or services to consumers primarily for personal, family, or household use.

125. Instructure is a "person" as defined by Civil Code§§ 176l(c) and 1770, and has provided "services" as defined by Civil Code§§ l 76l(b) and 1770.

126. Plaintiff and class members are "consumers" as defined by Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

127. Instructure's acts and practices were intended to and did result in the sales of products and services to Plaintiff and class members in violation of Civil Code § 1770, including:

a) Representing that goods or services have characteristics that they do not have;

b) Representing that goods or services are of a particular standard, quality, or grade when they were not;

c) Advertising goods or services with intent not to sell them as advertised; and

d) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

e) Instructure violated Civil Code § 1770, in the following ways:

f) Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and class members private information, which was a direct and proximate cause of the data breach;

g) Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures which was a direct and proximate cause of the data breach;

h) Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and class members private information, including duties imposed by CMIA, Cal. Civ. Code § 56.36(b), which was a direct and proximate cause of the data breach;

i) Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and class members private information, including by implementing and maintaining reasonable security measures;

j) Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and class members private information, including duties imposed by CMIA, Cal. Civ. Code§ 56.36(b); and

k) Failing to timely and adequately notify Plaintiff and class members of the data breach.

128. Instructure's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Instructure's data security and ability to protect the confidentiality of consumers private information.

129. Had Instructure disclosed to Plaintiff and class members that its data systems were not secure and, thus, vulnerable to attack, Instructure would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Instructure was trusted with sensitive private information regarding millions of consumers, including Plaintiff and class members. Instructure accepted the responsibility of being a steward of this data while keeping the inadequate state of its security controls secret from the public. Accordingly, because Instructure held itself out as maintaining a secure platform for private information data, Plaintiff and class members acted reasonably in relying on Instructure's misrepresentations and omissions, the truth of which they could not have discovered.

130. As a direct and proximate result of Instcuture's 's violations of California Civil Code § 1770, Plaintiff and class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their private information, including but not limited to the diminishment of their present and future property interest in their private information and the deprivation of the exclusive use of their private information.

131. Plaintiff and the class seek an order enjoining the acts and practices described above.

///

///

///

///

**COUNT EIGHT**
**VIOLATION OF THE**
**CALIFORNIA CONSUMER PRIVACY ACT,**
**CAL. CIV. CODE§§ 1798.100, ET SEQ.**
**(On Behalf of Plaintiff and all Classes)**

132. Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

133. Plaintiff and class members are residents of California.

134. Instructure is a corporation that is organized or operated for the profit or financial benefit of its shareholders or other owners.

135. Instructure is a business that collects and or maintains consumers personal information as defined by Cal. Civ. Code§ 1 798.140(e). Specifically, Instructure obtains, receives, or accesses consumers personal information when customers use Canvas.

136. Instructure violated Section 1798.150 of the California Consumer Privacy Act by failing to prevent Plaintiff and class members nonencrypted and nonredacted personal information from unauthorized access and exfiltration, theft, or disclosure as a result of Instructure's violation of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

137. Instructure knew or should have known that its data security practices were inadequate to secure the class members private information and that its inadequate data security practices gave rise to the risk of a data breach.

138. Instructure failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the private information it collected and stored.

139. The cybercriminals accessed "nonencrypted and unredacted personal information" as covered by Cal. Civ. Code§ 1798.81.5(A)(l)(d), in the data breach.

140. Upon information and belief, Plaintiff and class members private information accessed by the cybercriminals in the data breach includes "nonencrypted and unredacted personal information" as covered by Cal. Civ. Code § 1798.81.S(A)(1)(d).

141. Plaintiff seeks injunctive relief in the form of an order requiring Instructure to employ adequate security practices consistent with law and industry standards to protect class members private information, requiring Instructure to complete its investigation, and to issue an amended statement giving a detailed explanation that confirms, with reasonable certainty, what categories of data were stolen and accessed without the class members authorization, along with an explanation of how the data breach occurred.

142. Plaintiff and class members seek statutory damages or actual damages, whichever is greater, pursuant to Cal. Civil Code § 1798. 150(a)( l )(A).

143. As a direct and proximate result of Instructure's violations of the Cal. Civ. Code §§ 1798.150, Plaintiff and class members suffered damages, as described above.

144. Plaintiff and the class seek pecuniary damages pursuant to Cal. Civil Code § 1798. 150(b).

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and on behalf of the proposed class, request that the Court:

a. Certify this case as a class action, appoint Plaintiff as class representative, and appoint Plaintiff's Counsel as Class Counsel for Plaintiff to represent the class;

b. Award Plaintiff and class members appropriate relief, including actual and statutory damages, restitution and disgorgement;

c. Award equitable, injunctive and declaratory relief as may be appropriate;

d. Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

e. Order Defendant to provide notice, remediation, monitoring, security improvements, and academic support services;

f. Award pre-judgment and post-judgment interest as prescribed by law; and

g. Grant additional legal or equitable relief as this Court may find just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated May 19, 2026

THE NOURMAND LAW FIRM, APC

By: */s/ Michael Nourmand*
Michael Nourmand, Esq.
James A. De Sario, Esq.
Attorneys for Plaintiff